UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

R.P.L.,

               Petitioner,

-against-

RAUL MALDONADO, JR., *in his official capacity as Warden of the Metropolitan Detention Center*; LADEON FRANCIS, *in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement*; TODD LYONS, *in his official capacity as Acting Director U.S. Immigrations and Customs Enforcement*; KRISTI NOEM *in her official capacity as Secretary of Homeland Security*; PAM BONDI, *in her official capacity as Attorney General*,

               Respondents.

**MEMORANDUM & ORDER**
25-CV-6886 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Approximately three months ago, on September 18, 2025, while Petitioner R.P.L. ("R.P.L." or "Petitioner") was driving to work, U.S. Immigration and Customs Enforcement ("ICE") stopped him while they were attempting to locate another individual. After a records check confirmed that Petitioner was not their original target, ICE agents arrested him anyway and roughly a week after he was arrested in Newburgh, New York, Petitioner was detained in the Metropolitan Detention Center ("MDC") in Brooklyn. He has been detained at the MDC since

late September. On December 15, 2025, Petitioner filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, seeking immediate release from detention. *See* ECF No. 1.[1]

For the following reasons, his petition for a writ of habeas corpus is GRANTED.

## **BACKGROUND**[2]

Petitioner is a small business owner, father, and husband who has lived in the United States for decades. *See* ECF No. 1 ¶ 59; *see also* ECF No. 7-2. His arrest on September 18, 2025, is his first encounter with immigration authorities. *See* ECF No. 1 ¶ 58; ECF No. 7 at 2. After his arrest, Petitioner was transferred from the Orange County Jail to the MDC, where he remains detained. *See* ECF No. 1 ¶¶ 53–54; ECF No. 7 at 2.

On December 15, 2025, Petitioner initiated the instant action by filing an emergency petition for a writ of habeas corpus, ECF No. 1 ("Petition"), and an emergency application for an order to show cause in support of the Petition, ECF No. 3. That same day, the Court issued an Order to Show Cause directing the government to show cause why a writ of habeas corpus should not be granted, and why it should not be ordered to immediately release Petitioner from

---

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[2] The Court relies on evidence submitted by the parties in outlining the relevant facts to this Order, including declarations submitted by both Petitioner and the government, and the parties' submissions in response to the Court's Orders. The facts recited here are undisputed unless otherwise noted. *See Hyppolite v. Noem*, No. 25-cv-4304, 2025 WL 2829511, at *2 n.1 (E.D.N.Y. Oct. 6, 2025); *Munoz Materano v. Arteta*, No. 25-cv-6137, 2025 WL 2630826, at *1 n.1 (S.D.N.Y. Sept. 12, 2025).

After review of all the submissions, the Court finds that the Petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. *See* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require"); *see also Tumba Huamani v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *1 n.1 (S.D.N.Y. Nov. 4, 2025).

detention. A week after the Court's Order to Show Cause, the government filed its response. *See* ECF No. 7. In its response, the government noted that it was "cognizant" of this Court's Order in *O.F.B. v. Maldonado*, No. 25-cv-6336, 2025 WL 3277677 (E.D.N.Y. Nov. 25, 2025), and because it "respectfully disagree[d]" with the Court's conclusion, was submitting a "letter in response to the Order to Show Cause and in opposition to the Petition in lieu of a memorandum of law." ECF No. 7 at 1. On December 24, 2025, Petitioner filed his reply. ECF No. 9.

## LEGAL STANDARD

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). A petition for a writ of habeas corpus under Section 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

In the instant petition, R.P.L. seeks a writ of habeas corpus based on: (1) a violation of Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a); (2) a violation of his procedural due process rights under the Fifth Amendment; (3) a violation of his substantive due process

rights under the Fifth Amendment; (4) a violation of the Fourth Amendment; and (5) a violation of the Administrative Procedure Act ("APA") and the *Accardi* Doctrine.[3] ECF No. 1 at 18–24.

In its response, the government noted that it "respectfully disagree[s] with this Court's conclusion in *O.F.B.* [and] respectfully submit[s] that Petitioner is covered by § 1225," based on "cases decided before and after *O.F.B.* that adopt Respondents' argument." ECF No. 7 at 1. To the extent that is an argument against Petitioner's detention in this case, the Court disagrees.

The Court's position on the question of whether Section 1225 or Section 1226 applies in scenarios where a petitioner was detained after living in the country has not changed. In fact, based on "cases decided before and after *O.F.B.*," *id.*, the Court is convinced that its earlier conclusion—that Section 1226 applies in such circumstances—is correct. There is a staggering number of cases, both in this Circuit and across the country, that have rejected the government's argument that Section 1225 applies to individuals who have been living in the United States for a number of years before they were detained. As one court in this Circuit explained, a day after this Court's decision in *O.F.B.*:

> the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.

*Barco Mercado v. Francis*, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025); *see also id.* at *13 (appendices collecting the 350 cases in which the challengers prevailed, and the 12 cases that have gone the other way). Here, the government fails to even mention "the

---

[3]    Although Petitioner presents serious claims regarding his medical care at the MDC (claim three), unlawful arrest (claim four), and violations of the APA (claim five), see ECF No. 1 at 20–24, the Court need not address these claims, given its conclusion that Petitioner's detention under 8 U.S.C. § 1226 violates the Due Process Clause of the Fifth Amendment.

4

overwhelming, lopsided majority" of decisions that have rejected its interpretation. *Id.* at *4. Even if it had, the Court would have landed there anyway, as it is bound by Supreme Court precedent that makes clear that Section 1226 applies to noncitizens already present in the country. *See O.F.B.*, 2025 WL 3277677, at *4–5 (collecting cases).

Of course, this case is distinct from *O.F.B.* on the facts, but even if the facts don't repeat precisely, they rhyme. And, just as this Court was persuaded by Judge Liman's analysis in *Tumba Huamani*, 2025 WL 3079014, it is again persuaded by his analysis in *Campos v. Deleon*, No. 25-cv-10099, 2025 WL 3514120 (S.D.N.Y. Dec. 8, 2025), a case in which the facts appear to match those of this case on all fours. There, the court found that Section 1225 does not apply "where there is no evidence discretion was exercised before the [p]etitioner is detained," and that "[i]f [p]etitioner's initial detention itself was consistent with due process, [p]etitioner would undoubtedly be entitled to a bond hearing pursuant to 8 U.S.C. § 1226." *Id.* at *1. In *Campos*, Judge Liman also noted that "[a] number of other courts that have recently considered the same question [and] are in agreement": the detention of a petitioner during his first encounter with immigration authorities is "unlawful from its inception because ICE detained him under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)." *See id.* at *2 (collecting cases).[4] That unlawful detention entitles that petitioner to immediate release. So it goes for Petitioner in this case.

Because the Due Process Clause of the Fifth Amendment extends to "to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), the Court applies the

---

[4] The government does not bother to distinguish any of the cases that appear to match the facts of this case, even though most of the cases were included in R.P.L.'s petition. *See* ECF No. 1 at 14.

balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), *see Velasco Lopez v. Decker,* 978 F.3d 842, 851–53 (2d Cir. 2020) (applying the *Mathews* test in context of noncitizen's habeas petition and holding that petitioner's due process rights were violated because he was "neither a flight risk nor a danger to the community").  Under that test, the Court balances:  "(1) the private interest that will be affected by the official action; (2) the value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 334.

    The first two factors favor Petitioner because his interest in "freedom from imprisonment . . . lies at the heart of the liberty [the Due Process Clause] protects," *Zadvydas*, 533 U.S. at 690, and because of the significant risk of erroneous deprivation of Petitioner's liberty interest without additional safeguards, *see Valdez v. Joyce*, No. 25-cv-4627, 2025 WL 1707737, at *3–4 (S.D.N.Y. June 18, 2025) (noting a "high" risk "of erroneous deprivation in the context of re-detention absent a change in circumstances, procedure, or evidentiary findings").  Therefore, the instant *Mathews* inquiry turns on the third factor:  the government's interest.

    The government interest in detaining "individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community."  *Valdez*, 2025 WL 1707737, at *4 (quoting *Velasco Lopez*, 978 F.3d at 854; *Zadvydas*, 533 U.S. at 690).

    Here, the government presents absolutely no argument that Petitioner's detention is necessary to prevent danger to the community.  Instead, it claims, in wholly conclusory fashion, that R.P.L. is a flight risk by virtue of the fact that, before September 18, 2025, he had yet to encounter immigration authorities and purportedly "never followed the immigration rules that

6

applied to him." ECF No. 7 at 5. That argument, however, ignores the reality that the government has in the past released, on their own recognizance, an untold number of noncitizens found in the country illegally in situations where there is much less available information about whether those individuals present a risk of flight than there is here. In effect, the government is simply asserting that Petitioner is a flight risk because it says he is. That is simply not enough, especially here, where the unrefuted facts prove the exact opposite. Specifically, Petitioner maintains a stable residence in Newburgh, New York, where he lives with his wife and their teenage son, *see* ECF No. 1 ¶ 49, and Petitioner is a small business owner who owns and runs an Italian restaurant with his wife, *id.* ¶ 59.[5] Accordingly, the government's argument that Petitioner is a flight risk lacks merit and, because it has failed to present any evidence or even allege in response to the Petition that R.P.L. is a danger to the community, the Court concludes that Petitioner is neither a flight risk nor dangerous, and absent a showing that detention is necessary to ensure Petitioner's appearance or to prevent danger to the community, the government has failed to show a significant interest in Petitioner's detention. Stated otherwise, the third *Mathews* factor, like the first two, favors Petitioner.

Taken together, it is clear that Petitioner is entitled to more process than he received and, at minimum, the government has not identified any basis under 8 U.S.C. § 1226(a) that could

---

[5] The government claims that R.P.L. "now alleges that he has a wife and son and owns a restaurant" and that its records "do not indicate that Petitioner stated such facts at his encounter before his arrest." ECF No. 7 at 2. The government's characterization borders on being disingenuous, because even if he did not state such facts before his arrest, the government effectively concedes that he would not have had time to communicate too many facts to ICE agents at that time, since he was arrested within minutes of the initial encounter. *See id.* (stating R.P.L. was arrested "approximately five minutes after the encounter began"). In any event, R.P.L. communicated most of these facts on the day of his arrest. *See* ECF No. 7-2 (Form I-213, Record of Deportable/Inadmissible Alien) (indicating that R.P.L. is married and called his wife approximately an hour after his arrest, listing his occupation as a "restauranteur," and listing him as an "owner" under "type of employment").

7

support Petitioner's continued detention.  Accordingly, the Court is left with the unavoidable conclusion that his detention violates the mandates of the Due Process Clause.  The appropriate remedy is his immediate release.  *See Rocano Buestan v. McShane*, No. 25-cv-8544, 2025 WL 3496361, at *6 (S.D.N.Y. Dec. 5, 2025) (Without "a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause," ICE agents caused petitioner "to be placed in custody in violation of his rights to procedural due process.  The proper remedy for that unlawful detention is release.").

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus, ECF No. 1, is GRANTED.   The government is directed to immediately release Petitioner from custody and is further directed to certify compliance with the Court's Order by filing a letter on the docket no later than noon on December 29, 2025.

The Court further orders that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where Respondents will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a).  The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.


SO ORDERED.

                                                 */s/ Hector Gonzalez*
                                                  HECTOR GONZALEZ
                                                  United States District Judge

Dated: Brooklyn, New York
       December 26, 2025